## Philadelphia Federation of Teachers, Local No. 3 v. Philadelphia School District

*Leonard M. Sagot,* for plaintiffs.
*Vincent J. Salandria,* for defendants.

LEVIN, J., July 23, 1973.—This case involves a grievance filed by the Philadelphia Federation of Teachers challenging the Board of Education's creation of the position of house director in the Martin Luther King High School and its refusal to create and fill three positions as department heads for the English, Mathematics and Social Studies departments. Pursuant to the terms of the collective bargaining agreement between the parties, the grievance was submitted to binding arbitration for a determination whether the failure to appoint certain department heads in the new high school violated article II, sec. 2, of the contract, which reads as follows:

"The Board and its representatives shall take no action violative of, or inconsistent with, any provision of this Agreement or any policy or practice governing working conditions of teachers existing on the date of the execution of this Agreement. The Board further agrees that it and its representatives will not, except as provided in paragraph 2b(i), (ii), (iii), and 2c of this Article, take any action affecting other working conditions of teachers without prior adequate negotiation with the Federation."

The arbitrator held that the expert professional assistance provided by a department head cannot unilaterally be withdrawn from teachers. The parties differ in their interpretations of this holding, giving rise to the dispute at bar. Plaintiff-union argues that

since the arbitrator sustained the union's grievance, that the failure to establish the three openings for department heads at Martin Luther King High School is in violation of the collective bargaining agreement, the court must now enforce the arbitrator's decision by requiring the school board to appoint three individuals to the designated positions. For purposes of this suit, defendant school board accepts the arbitrator's determination that its failure to appoint three department heads is in violation of the agreement, but the school board further contends that the arbitrator contemplated several administrative arrangements which might be worked out by the parties, and that the appointment of three individuals as department heads is not the sole solution to filling the void left by the absence of any such supervisory personnel. Since each party objects to the other's construction of the arbitrator's decision, this court must examine that decision, not with the intention of modifying or changing it but for the purpose of determining what remedies were encompassed by the award and what course of action is now in order.

In their own separate ways, both parties are seeking enforcement of the arbitrator's award. Plaintiff prays that the court accept jurisdiction in order to enforce that section of the arbitrator's award suggesting that the board be compelled to name three individuals as department heads. Defendant asks the court to deny jurisdiction and coincidentally not to disrupt that part of the award contemplating attempts by the parties to arrive at a mutually satisfactory solution other than the appointment of three department heads.

Defendant's objections to this court's reviewing the award, on the grounds that plaintiff is foreclosed from invoking the court's powers of equity where the federation has failed to comply with the award and letter

of clarification of the arbitrator, begs the question upon which we must rule, i.e., what *is* the effect of the arbitrator's decision? The agreement between the parties states in article IX, sec. 2, step 3(c)(ii), that "The decision of the arbitrator, if made in accordance with his jurisdiction and authority under this Agreement, will be accepted as final by the parties and both will abide by it." Obviously, there can be no compliance where there is disagreement with the meaning of the decision. Accordingly, we dismiss defendant's preliminary objections and proceed with the matter of interpreting the award. Since we will not attempt to modify the award and since we must accept the judgment of the arbitrator as final on the issues he settled, we may properly retain jurisdiction to enunciate more clearly his holding and to underscore the issues to which he was confined in his decision. Cf. Goldstein v. International Ladies' Garment Workers' Union, 328 Pa. 385 (1938). See also Sley System Garages v. Transport Workers Union of America, 406 Pa. 370 (1962).

Our decision to review the arbitrator's opinion is not diminished one iota by the district court's opinion in American Can Co. v. United Papermakers and Paperworkers, AFL-CIO (E.D. Pa., March 29, 1973), which is cited by plaintiff apparently in the hope that it would dissuade this court from analyzing the underpinnings of the case at bar. American Can Co. presented a situation in which the arbitrator and the reviewing court arrived at a similar conclusion based on diametrically opposed rationales. This led to the court's upholding the arbitrator's result without regard to the specific reasoning supporting his decision. That is not to say, however, that the rationale supporting an arbitrator's decision does *not* illuminate the meaning and significance of the award itself. This court is

not prohibited from examining the arbitrator's decision; to the contrary, we *must* review that decision to determine the remedies to which the parties are entitled at this juncture.

The main source of confusion arises over the apparent dichotomy expressed by the arbitrator on the final page of his opinion where he states that (1) the expert professional assistance of a department head *cannot* unilaterally be withdrawn from teachers, and (2) the parties should try to accommodate their differences by *negotiating* on the question of how to provide administrative and service support in the houses at the Martin Luther King High School while meeting the desires of the teachers for the professional support and direction they enjoy from department heads. As stated in the letter of November 9, 1972, addressed to the arbitrator by counsel for the parties, it is clear from the arbitrator's opinion that he sustained the union's grievance. On page 5 of his opinion, the arbitrator stated:

"The essential question in this case is whether the failure to establish Department Heads for three academic subjects widely taught in Martin Luther King High School is in violation of a policy or practice governing working conditions of teachers."

What is unclear, however, is the effect of this holding that expert professional assistance of a department head cannot unilaterally be withdrawn from teachers. The answer to this apparent contradiction is provided both in the original opinion and the letter of clarification written on November 20, 1972.[1] The

---

[1] Despite defendant's protestations to the contrary, we find no impropriety in using the letter of clarification as additional support for our interpretation of the arbitrator's initial decision. Although an arbitrator cannot *impeach* his own findings, Patriotic Order Sons of America Hall Association v. Hartford Fire Insurance

question to which Mr. Rovner addressed himself was not whether *three department heads had to be appointed,* but whether the *failure to establish department heads for three* subjects is in violation of a policy or practice governing working conditions of teachers. The crucial distinction lies in the emphasis that it is a "quest for perfecting *pedagogical* proficiency of each teacher in a Department that is involved here." The thrust of the arbitrator's discussion recognizes that the need for department heads lays not in some bureaucratic desire for uniformity but in the very significant role they play in the organization of curriculum assignments and improvement of the teaching of particular subjects included within that department. The arbitrator was concerned less about replacing the purely administrative functions rendered by the department heads than he was with filling the supervisory gap exposed by their absence and which the appointment of house director would not satisfactorily cure. He suggested that the parties should discuss any alternatives that would satisfy the need for supervision, whether it be by the practice of filling established department head openings or by some other arrangement; thus, the appointment of three heads was not the sole remedy available to the parties, although resort to that prior practice, if agreed to by the parties, would rectify plaintiff's grievance.

Broken down to its essentials, the arbitrator's decision treats three separate questions. First is the

---

Co., 305 Pa. 107 (1931), and having once completely exercised his authority by making his award, an arbitrator cannot correct mistakes in his award or alter it to conform to his changed views, Hartley v. Henderson, 189 Pa. 277 (1899), he is not precluded from restating and clarifying his original opinion. Moreover, plaintiff is hardly in a position to object to our consideration of the letter of clarification which was requested jointly by the parties.

question whether the refusal to fill three positions as department head violates the collective bargaining agreement. The arbitrator concludes that it does. Next is the question whether the creation of the position of house director violates the collective bargaining agreement. The arbitrator concludes it does not. Finally, assuming the above conclusions, what remedy is in order? To this question the arbitrator responds that the parties should attempt to reconcile their differences, and if no agreement is forthcoming, they should then submit a new grievance to arbitration in order to resolve the points of disagreement.

This third conclusion constitutes an unacceptable answer to a problem which the parties submitted to arbitration because they could not resolve their differences by themselves. To return the dispute to the parties for resolution will simply prolong the agony and frustrate the reconciliatory role intended for the arbitrator. Difficult as the task may be, the arbitrator must deal unflinchingly with the grievance submitted by the parties, and he must render a final decision which is certain and final in order that it may, of itself, be sufficient to support an action to compel performance.

The case of Connor v. Simpson, 104 Pa. 440 (1884), presents a similar problem and is instructive on the issue raised herein. In that case, Mr. Justice Clark stated, on page 442:

"The reference was, of all and every question of difference, 'between the parties growing out of the contract,' questions of law, as well as questions of fact, the decision of the arbiter to be 'final.' The submission, therefore, embraced the question of difference between the parties, as to the construction of the contract. Whether ten per cent. of the amount of each estimate, retained by Simpson, was to be treated as stipulated damages, or as a penalty, merely, was therefore for

the arbiter's decision. This question he has, however, not decided; he indicates pretty clearly that he has an opinion on the subject, and perhaps intimates what that opinion is; but, he says, 'I do not wish to pass upon a legal question of that nature,' and he does not pass upon it.

"His award is in the alternative, and there is no proper tribunal, to which the pending question submitted by the arbiter can be referred, until his jurisdiction is determined; the parties intended to be obliged only by what the arbiter himself declared to be his award. The question of difference is undetermined; the award is not final—it is uncertain and indefinite."

As in the more recent case of La Vale Plaza, Inc. v. R. S. Noonan, Inc., 378 F. 2d 569 (3rd Cir., 1967), we order that the award be resubmitted to the arbitrator for further clarification. As Judge Freedman stated in that case, "where the award does not adjudicate an issue which has been submitted, then as to such issue the arbitrator has not exhausted his function and it remains open to him for subsequent determination."

Quoting Mr. Justice Fell's opinion in Frederick v. Margwarth, 221 Pa. 418 (1908), La Vale reiterates the applicable principles:

"The rule undoubtedly is that, when an arbitrator has made and delivered his award, the special power conferred upon him ends. But an award must be final, complete, and coextensive with the terms of the submission. The arbitrator, through mistake, failed to consider and decide a part of the dispute submitted to him, and the award was invalid because incomplete. But the agreement was still in force, and it was competent for the arbitrator to finish his work by making a full and complete award."

See also Wm. C. Hamilton & Son v. Hart, 125 Pa. 142 (1889).

In conclusion, we find that the arbitrator has

rendered decisions on the questions of whether (1) the appointment of house directors or (2) the failure to appoint department heads violates the collective bargaining agreement; but he has failed to render a final decision on the remedy to be followed. As such, his opinion is incomplete, since it leaves the ultimate issue in abeyance. Accordingly, we make the following

## ORDER

And now, July 23, 1973, the grievance of the parties having been submitted to arbitration and the arbitrafor having rendered a partial decision, that the expert professional assistance of a department head cannot unilaterally be withdrawn from teachers and that the appointment of house directors is not, of itself, a violation of the collective bargaining agreement, the grievance is returned to the arbitrator for a complete resolution of the issues presented and construction of a final remedy in compliance with the terms of the agreement. Pending his decision, this action will be maintained on the docket of the court and the parties shall present to the court a copy of the final decision and order of the arbitrator.